Appeal 2007-5140 Mr. Rylander, good morning. Good morning, Your Honor. Please proceed. It's an honor to appear before you again. Your Honor, may it please the Court, on behalf of Blueport, Blueport asks this Court to reverse the judgment of the case of an allegation of copyright infringement by an employee of the Air Force against the Air Force. We hope to show that the lower court misapplied the burden of proof on what's known as the Section 1498B defenses and under that misallocation of the burden of proof and incorrect constructions of those defenses Well, why do you call them defenses? Well, Your Honor, I believe because we believe they are affirmative defenses. Well, of course you believe so, but you have to give us the reasons so we can assess whether we agree with your belief. Yes, Your Honor. We believe that in comparison with other sections, in comparison with itself, in looking at the language and the legislative history, it should be considered to be an affirmative defense. We believe that it is quite correct to Affirmative defense to what? Affirmative defense to the claim of copyright infringement by the employee that the employee makes a claim of copyright infringement against the Air Force and the government can raise the defense Why isn't it an element of the cause of action? Because, among other things, as this Court construing 1498C in the Zoltek case considered, the fact that it's phrased in the negative and at least two of the defenses are the same language which shall not negative affirmance and we believe that putting the burden on the plaintiff to disprove negative affirmance would as the Ninth Circuit says with respect to discretionary function exception, would be preposterous. Is the statute of limitations in an ordinary case an affirmative defense? Do you want to plead the statute? Absolutely, Your Honor. Is it in the court of federal claims? There's actually two different statute of limitations. Are you familiar with the Supreme Court's opinion in John Arsene and Gravel? Yes, Your Honor. And that is a statute of limitations under the Tucker Act. That's not a statute of limitations that's in play in this case. The 1498B has its own statute of limitations. I'm just going to the point because the Supreme Court wrote in some pretty forceful language that the statute of limitations is jurisdictional because it bites the sovereign immunity. That is correct, Your Honor. That's the argument the government's making here with regard to these exceptions. It just sort of seemed to me that the wind that's blowing down from number one first street up on the hill is telling us that these exceptions are most likely jurisdictional because they impinge on the sovereign immunity. Your Honor, we respectfully disagree. In fact, we read Kendall to support our argument. And let me explain why, Your Honor. Because first you had the Irwin case. In the Irwin case, the Supreme Court says it's going to lay out a general rule applicable to time limitations. And it even talked about the Tucker Act six-year statute of limitations. And it said the general rule is going to be that it's subject to equitable tolling. And courts relied on that for a while. And then this six-year statute of limitations for the Tucker Act came up before the Supreme Court again. And the Supreme Court at that time said, well, the key difference here, why are we ruling this as jurisdictional and in Irwin we didn't rule that statute as jurisdictional, the key difference here, even though there's similar language, is that there's been 100 years of interpretation on this statute. So we believe the Supreme Court did that. And because of sovereign immunity. Well, that's correct. In an Irwin setting, there's no sovereign immunity. In the ordinary courts. The thing that makes the Court of Federal Claims unique or exceptional is that you're trying to sue the king. That is correct, Your Honor. Can't the king really set the standards under which it can be sued? The king can set the standards under which it can be sued, Your Honor. I'm not trying to challenge my two sovereign immunity. But we believe if you look at the statute and you look at the language, that it is and should be considered to be an affirmative defense. Why? There's two very good reasons. First, the discretionary function, Your Honor, that has the same language, shall not. That's considered to be... Do you think there's some kind of iron rule that if something's phrased in the negative, that means it's an affirmative defense and can't be jurisdictional? Is that what you're trying to sell? With respect to these defenses, that is exactly what I'm asking the Court to rule. I'm asking the Court to rule because these were phrased in the negative and as we count, there's at least eight different propositions that would have to be disproved by a plaintiff in any case that we are asking the Court to rule because they're phrased negatively that they should be considered to be affirmative defenses. Would the evidence in this case have been any different if it had been an affirmative defense instead of a jurisdictional element? Your Honor, we believe in reviewing the record that in addition to the misconstruction of the defenses... What pieces of fact would have been different? Well... I don't understand your question. It struck me if Judge Block had said well, I think maybe it's an affirmative defense so the government would then put your client on the stand and ask all these questions and we'd have exactly the same record we have now. Well, our client did put it on, Your Honor, but we think that by putting the burden on the plaintiff that basically allowed the lower court to treat any evidence put on by the defendant as... If I were reviewing this case as an affirmative defense, would it be any different? I believe it would, Your Honor. What arguments would be different? Well, I would point out, Your Honor, that everybody in Mr. Davenport's chain of command, including Mr. Davenport, all said this was not within his duties. Programming was never something that he or any other manpower person would be required to do. That is not something they did at all. That, in fact, he asked to get programming training several times and he was specifically declined. They were told him, no, you can't have programming training because it's not your job to do. There's an entirely separate job designation in the Air Force for programming. There's actually a programming shop. He was not... Didn't Judge Block say the law on the subject, a case law that's been developed on the subject, says that you look to more than simply the job description? You're saying his job description didn't say write software. Therefore, all the people in the military said it wasn't part of his job description, wasn't part of his duty. As I read Judge Block's opinion, he said... He credited that. He said, yes, there is this testimony. But as Judge Block read the relevant case law, he said when you're examining this exception under this statute, you look to more than just the person's job description. Well, Your Honor, I believe Judge Block did not actually look or put any weight on what Mr. Davenport's chain of command did. So, in addition to the job description, as you say, yes, we believe it would be appropriate to look and see what everybody says his job duties are. So, not only did he testify as to what his job duties are, which is essentially a database signature, but his entire chain of command, Colonel Manning, Chief Master Sergeant Anthony Dent, who was his direct superior at the time, and who at the time of trial was the most senior manpower enlisted person in charge of maintaining job duties in the Air Force documents. And they said it wasn't his job, it wasn't his duty. Major Meeker, who was his direct officer in command at the time, said in respect to this program he wouldn't feel comfortable to order Mr. Davenport to do anything with that program. That is not something in the military that a commanding officer over an enlisted person would say if he thought it was his job duty. I'm not comfortable ordering... Was he violating the terms and conditions of his assignment when he used this program? I don't believe he was, Your Honor. I don't know that there is anything in the record that says that he was. In the military, do you get ahead by doing things that are beyond the scope  actual work assignment description? I believe in some cases you do, Your Honor. In some cases in evaluations, they credit the fact that he did great work with the Girl Scouts and with the Little League. But no one would contend that doing Girl Scouts... What is the point we're pursuing here? Going through all this testimony, this colonel said this, and this master sergeant said that, and my client said so and so, and on and on and on. What's the point? If I may say, the question presented to me was aren't we supposed to look more than just what the job documentation says Before we got into the job description, what is the point you're presenting? Well, the point I'm presenting initially is that the burden of proof should be on the government. Yeah, but Judge Clevenger asked you what difference would it have made? Who had the burden of proof? Lots of evidence in all kinds of different directions came in. We have a very full record. The judge reached certain conclusions based on the record. We have to review those conclusions. So what difference does it make who back then had the burden of proof? Well, Your Honor, we think it makes a big difference. Why? What is the difference that it makes? I understand from the reviewing court's perspective, Your Honor, you have the record in front of you and you have the facts or the conclusions made by the court. So from this court's perspective, the burden of proof below probably doesn't make a difference, but when you're going to trial and you're preparing for a trial and you're putting on a case, whether you have the burden of proving several different negative elements, in this case I counted 11, makes a big difference. But whoever had the burden, both sides put in lots of evidence. We have a very full record. So at this point, why does it make any difference who had the burden? We've got the factual record. We've got the findings based on that evidence. We can review whether there was an error. With due respect, if the case went back before Judge Block because this court found it was a misallocation of the burden of proof, we believe that the government's evidence... Why should we even reach who had the burden of proof if we conclude it doesn't make any difference? Well, if the court concludes it doesn't make any difference, I understand that point. As a matter of jurisdiction, you believe you prevail, correct? That is correct, Your Honor. And as a matter of affirmative defense, you believe you prevail, correct? That is correct, Your Honor. And the government feels exactly the opposite on both issues. That is true. It struck me that except for the pristine nicety of the jurisdictional concept, which I embrace because I'm obligated to as a judge, it just seemed to me that there wasn't a penny's worth of difference. The record was developed. We have the facts in the record. We assess, for example, on this first topic you're talking about about whether this was prepared as part of his official functions. I thought we had a finding in the record that his official duties include developing and maintaining Air Force organizational and process standards and determinants, designing, operating, and maintaining manpower data systems at the base major command. And I would have thought writing the software had something to do with designing, operating, and maintaining manpower data systems. No, and the testimony at trial, Your Honor, was that when they referred to designing there, they referred to developing the requirements provided to the programmers, for the programmers to design, that manpower specialists in fact don't do programming, and in fact at no point in the trial, or in the briefing, or in the appendix, at anywhere did the government ever point to any other manpower. It could have been in the military command, it could have been punished for programming. If they thought he was programming on the job, but the evidence wasn't that he was programming on the job, Your Honor. And certainly he's free to do anything in his home that's legal. They were kicking the tires, they were doing a testing of the program at work? Yes, Your Honor, after he created it, after he developed it. And he was receiving inputs from colleagues on the job site about how to tinker with and change the program. That is correct, Your Honor. I'm certainly not going to disagree with the court that after he created it, and brought it to work, he shared it with Master Sergeant Luckey. All outside the chain of command. Well, his command was aware of it, Your Honor. Colonel Manning testified that I was aware of it. I didn't believe it was owned by the Air Force because he created it at home. But Major Meeker actually testified he was a really neat little programmer. And so it was not unknown to the chain of command. Mr. Rylander, in a final analysis, is there any difference whether it's a jurisdictional issue or an affirmative defense issue? The result would be the same? If the result is that the lower court reversed, then yes, the result would be the same, Your Honor. But we believe it makes a difference in the affirmative defense because the question is whether there was evidence... Let me ask you this question. Assume, for purpose of argument, we agreed with you and that Judge Block made a terrible mistake by putting a burden on you he shouldn't have put on you. So we vacate and send the case back. Yes. Are we required to tell Judge Block he has to have another trial? I don't believe you're required to do that. I believe Judge Block can make a determination. Could Judge Block just crank out the record and say, I've got all the facts, I've already done all the facts, the facts have come in, the testimony has been given, and I'm simply going to take the record up in my chambers and I'm going to say, oh my goodness, Blueport didn't have a burden. The government had a burden of affirmative defense. And he writes the same opinion. Exactly the same opinion. And he says, I made a mistake, I should have assigned the burden to the government's affirmative defense, I'm sorry I made that mistake, I've now reviewed the record, and he prints exactly the same opinion. It comes up here. What difference would it make to us for review? That raises a whole host of responses, Your Honor, and I'll try to address them all as they came to me while you were making your question. The first is that certainly Judge Block can do anything that is not an abuse of discretion after you reverse it. He could ask for additional briefing, he could ask for briefing on the issue, whether there needs to be further evidence. The government could ask for a supplemental trial, we could ask for a supplemental trial, and he could grant or deny any of those things. And then I would have a very difficult position if I went back to what this Court is saying. His grant or denial of those procedural motions was an abuse of discretion. The second issue raised by your question, Your Honor, is we believe his construction of those defenses, substantively, is incorrect. So I believe even regardless of the affirmative defense, I would address the legal conclusion aspects of the construction of those defenses. I see that I'm over time right now, Your Honor. Thank you. Mr. Bolden? May it please the Court, the critical issue at trial and here on appeal is whether any single one of the scope of employment limitations has been met. If so, that single scope of employment limitation is dispositive and Blueport loses. The trial court correctly held that not just one, not just two, but all three of the scope of employment limitations had been met. And his judgment based on a full trial on the merits should be respected. What difference does it make whether or not they're considered affirmative defenses or jurisdictional as part of the cause of action? It doesn't make any difference at all, Your Honor. If you look at footnote 25 of Judge Bloch's opinion, Judge Bloch said that no matter whether this is jurisdictional, no matter whether this is affirmative defenses, or no matter whether these are essential elements of the plaintiff's claim, the evidence is overwhelmingly in support of the government's position. Which footnote was that? That's footnote number 25. He doesn't cite whether it was an essential element of the plaintiff's claim. That's really an issue that's come up more on appeal, but he does say that the evidence is overwhelming. Does the statute support a jurisdictional analysis rather than an affirmative defense analysis because of the waiver of sovereign immunity? Yes, Your Honor. That is one aspect of it. However, there are several other aspects that also support the jurisdictional treatment of the scope of employment limitations in section 1498B. For example, the plain language of section 1498B is expressed in terms of the word action. The word jurisdiction is never used in section 1498B, and it's clear that Congress intended the word action to mean jurisdiction. For example, Congress explicitly provides for jurisdiction by stating the exclusive action shall be an action against the United States in the court of federal claims. At the same time, Congress limits that jurisdiction by stating exceptions to, quote, the right of action or by stating, quote, shall not confer a right of action. And this is all within the same statute, so this is completely different than the Arbaugh case or even the Leibniz case as well. Given Congress's expressed limitation on jurisdiction in the text, these limitations must be treated as jurisdictional, whether you're talking about the Arbaugh brightline rule or the John R. Sand case. Is that because the cause of action arises under that particular section, 1498B? That's correct, Your Honor. So that's pretty straightforward of analysis then. That's correct, Your Honor. What about 1498C? Is that the same? Because that deals directly with copyrights but overseas? Well, Your Honor, that issue was raised in the Zoltak case. Arguably, it's a different situation because it's a different subsection. And I can't remember if 1498C is phrased in terms of the word action. But that may very well be a different issue. So because of the use of that particular term, then the Congress essentially established a waiver of sovereign immunity by creating a cause of action within a certain time period. That's true. Even if one were to consider the legislative history, the legislative history also supports the conclusion that these... On the third exception, the coming up with the copyright using government time, materials, and facilities, isn't it clear that Mr. Davenport his copyright was fixed in a tangible form, if you will, and is off at home? I mean, under Supreme Court law, your copyright attaches when you finally have your fixed expression. It doesn't have anything to do with the time when you register it. And it does appear from the facts that he did fix the final form of version 2.1D at home. How nice to hear the government make a concession in this room. It's extraordinarily rare, so good for you. Let me just pursue that a little bit, because it struck me that the weakest of the three exceptions from the government's point of view was this one I'm talking about, preparation on using the government's time. It's true that there were some tire kicking, as I mentioned earlier, there were some modifications, but all of that was done at home. The modifications, the testing was done in the office. Why is it so that we should hold that Judge Block was correct in saying that the preparation here was using the government's time materials? The testing and the modifications were essential and necessary to create the final work, the 2.1D. Basically, this was a work in progress. Is that the copy? That's what's being asserted against the government? That's correct. That's the exact version that was alleged to be infringed in the complaint. So if he was trying to allege infringement of the initial version, you would have a weaker argument on this point? It would be a different case, Your Honor. It would be a weaker argument, would it not? It would be a weaker argument, Your Honor. I believe we would have a stronger argument because arguably the government wouldn't be using the initial version because Mr. Davenport actually induced and influenced the use of  That's sort of a trap for the unwary for Mr. Davenport because as his superiors kept saying, make it better, make it better, this is fabulous stuff. And so he's testing it in the workplace and he's receiving all the inputs. He goes home and he rewrites the program or rewrites the stuff so he makes it better and better and better. They sort of sucked him into the prepared during government time and asking him to improve it. Your question, Your Honor, begs the question of how did the superiors get the program in the first place? And the reason is because Mr. Davenport installed it on their computers. He distributed it to them. But I don't believe it's a trap for the unwary either because... Oh, he invited them. Right. Mr. Davenport, this goes sort of to the third statement of agency factor in that Mr. Davenport was motivated not only to help himself in his own job, but also to help the Air Force. And so he was motivated to serve the employer and this is actually a factor that... Well, this goes to him inducing the government to use, right? Right. I mean, some of these facts go to... But it's kind of circular. Maybe he came up with the original idea and then the bosses say it's great, so is he egging them on or are they egging him on? A little bit of both, isn't it? Yes, I think once the program got out that the bosses were supportive of it. His job changed to involve continuing work on this program to continue to develop the program to distribute the program to everyone. And he was specifically recognized and acknowledged in his enlisted performance report. How does a copyright holder in Mr. Davenport's position preserve his right, avoid, if you will, a copyright being taken by the government? I know you don't like that analogy, but the boss says it's a great idea you put in the suggestion box. It's a copyright. It belongs to him. At that stage in the game the government can't take it from him. He made it at home. And so he's encouraged, right, in the military by commanders to tell him to do this. It just concerned me a little bit because it looked like he was sort of being compelled to waive off any ownership interest under the statute that he would have by the fact that his program was so good. Certainly the military, like a lot of other places of work, offer all sorts of incentives for an individual to come up with ideas like this. The Air Force has something called the Idea Application which will reward someone for coming up with an idea, even within the scope of their employment. But the way 1498B and 1498A are structured is simply that in some situations you will have an invention or a copyrighted work that the employee is entitled to the title for, but they can't sue the government for that because of the scope of employment limitations specifically attached by Congress. Congress, if you look at the legislative history, was concerned about handicapping the government in proving the exact conditions under which the invention was made. Now this goes directly to Blueport's negative affirmance argument. Congress considered that yes, this might put some burden on a plaintiff under section 1498B, but at the same time the burden on the government would be even greater, and that is why this should be a jurisdictional limitation. Could Congress say that they could just give $5 for every copyright infringement period outright? Any copyright which is used by the government, developed by a government employee, we'll just give them $5. They limit the damages and limit the amounts in time periods. There may be a question of takings in that particular situation. If you'll recall, back in 1910 when 1498A or the precursor of 1498A was enacted, no government employee could sue at all. That was simply a jurisdictional limitation imposed by Congress. Around 1950, and if you look at the strategic demolition torpedo cases that bookend the change in the law, around 1950 Congress cracked open the door to allow employees to sue as long as they don't meet these scope of employment limitations. Congress has a lot of latitude in stating what the jurisdictional limitations are, and they've certainly done that here. They could be very penurious and say no recovery at all, too. That's correct. Looking specifically at the scope of employment limitations in Judge Block's findings, Mr. Davenport actually induced and influenced the use of work, and that's shown by the fact that he freely distributed the program. He posted it on an Air Force website. He did not discourage or try to stop others from using the program, and far beyond that he actually supported the program and made modifications to the program at the request of others. These are all specific fact findings that the court made in support of its determination that Mr. Davenport induced and influenced the use of the work. He created the program as part of his official duties. Looking again at the restatement factors, the first factor is whether this was the type of work that he was actually employed to do. If you look at his enlisted performance reports, or at least the Air Force manual, you'll see that he was employed to pull information from the database, to develop tools to use with the database, to format the information from the database into reports, and then provide those reports to his customers, to other Air Force individuals. That's exactly what this program does. Furthermore, the second restatement of agency factor is whether he did this within authorized time and space limitations. That's what we've been talking about a little bit, because some of the same facts that relate to government time, facility, and materials relate to the authorized time and space limitations. Finally, again, whether he did this to benefit the employer, there does not seem to be a dispute that he actually did do this to benefit the Air Force. Then turning to the last scope of employment factor, of course we have the government time, material, and facilities. The District Court, I'm sorry, the Court of Federal Claims specifically found that he beta-tested the program at work, that he had a friend test the program while at work, that he used special access, both authorized and unauthorized, to government databases to create the program. He got feedback and suggestions at work, and again, he used the Air Force's website to distribute the data. I trust you stand on your brief on the sovereign issue on the other cause of action? On the hacking statute? Yeah, on the hacking statute. I just wanted to raise that because it wasn't raised in the argument in chief, and in case the appellant wants to rebut on that issue, I will open the door for him. I'd be happy to go ahead and talk about that. I'd be happy to take it on the brief. Okay. Given these facts, and given the fact that the statute in section 1498A clearly satisfies the Arbol brightline rule, the trial court was correct in that the scope of employment limitations should be treated as jurisdictional, and that Mr. Davenport's actions met all three of the scope of employment limitations. In addition, the trial court's legal conclusions are well supported by precedent. Thank you. Thank you, Mr. Rylander. Rebuttal? Yes. May it please the court. The term scope of employment is used very loosely as if it was the same as official function, and we take issue with that. We take issue with the use of scope of employment in two respects. First of all, we say they're completely different. Congress does know how to use the term scope of employment in its legislation when it wishes to, and has used it several times in statutes. And it chose not to use that language. In fact, it's used the term scope of employment in the Copyright Act itself, and it chose not to use the term scope of employment in 1498B, which means Congress gives it a different meaning. We believe it's a more narrow meaning. The official function, at least if you look at the ordinary words for the official function, according to the dictionary citations we have, is an authorized act you're  Now, on the second issue, scope of employment, we believe even under scope of employment, that was not met. And we can see, number three, as we have, Mr. Davenport certainly wished to benefit the Air Force. He was a lifer in the Air Force. He likes the Air Force. He thought the Air Force would like this program. But he does not meet the other two requirements under scope of employment analysis. It is not the type of work he was particularly employed to do. And I want to harp on this again because, A, when he asked for training, they told him you can't have training because it's not your job to do it. When he asked for training on programming, they told him it's not your job. He apparently didn't need it. He was apparently a very good programmer and very creative without needing any special Air Force training to advance his skills. Well, Your Honor, by 1998, because in 1998 he bought Microsoft Access and he learned how to program in it. He'd asked for training in programming over the life of his employment at the Air Force. And he was in the manpower field almost from the very beginning in 1980s when he enlisted. I just don't understand how the fact that he was declined for requested training establishes anything of any use to you whatever. Well, with due respect, Your Honor, I respectfully disagree. We find it to be at the very least highly unfair to say it's not your job to do programming. We're not going to let you have any training in programming. And at the other hand say, oh, you created this silo program. It was your official function to do so. That seems to be mutually inconsistent. The government has taken a diametrically opposed view of inconsistent statements. We think the fact that he made those completely inconsistent positions is very favorable to the plaintiff. But we also rely on the fact that his chain of command said it wasn't his job to do it. It wasn't his job to program at all. And the fact that despite overwhelming opportunity, the government has never pointed to any other manpower specialist who ever did any programming. He's certainly not the only manpower specialist in the Air Force. It's a very big organization. They never pointed to any other person in this position who did any programming. The fact is he's the only one who did programming. And they put the cart before the horse. Because you did programming and we liked and used your programming, therefore it was your scope of employment to do so. But that's not the way to look at it. The way to look at it is, what was your scope of employment before you created it? The second issue is whether it's within the authorized time and scope. And I believe Judge Kelepinger hit the nail on the head, which is it was created when it was fixed in a tangible medium. So the fact that there was testing or suggestions afterwards doesn't play into factor two in the scope of employment at all. It was created and it's hung. Regarding the position to influence or induce use, we think it's very critical that the use be identified. Because otherwise, that potentially overwhelms any cause of action that a government employee could ever bring. And employees mentioned addressed this. What specifically do you mean by the use has to be specifically identified? Well, Your Honor, we believe the use in question is the use that is alleged to infringe. Was he in a position to influence, induce, or order the use that is alleged to infringe? We're not disputing that he let the Air Force use this program up to May 15, 2000. He's perfectly allowed to give a license and have a revocable license. Revocable licenses are absolutely established under the law. We cite those in the brief. But after May 15, 2000, he wasn't in a position to order, influence, or induce use. In fact, he didn't want them to use it. And he was powerless to influence, induce, or otherwise stop them from doing it. All the Air Force had to do to stop using it because they'd never abandoned the official MDS system. All they had to do to stop using it was not pay SAIC to hack into it. That's all they had to do. If they hadn't paid SAIC to hack into it to change to automatic expiration, the use would have stopped. So that's all they had to do was not hack into it. With respect to the DMCA, Your Honor, we go beyond standing on our brief. And I want to raise this issue. It's been very lightly touched upon. And, frankly, it is not our strongest issue, Your Honor. But the fact is, Judge Block did not consider Section 1202 of the DMCA, and he didn't consider a takings analysis because he said it was raised for the first time on summary judgment and it had never been mentioned in the complaint. And that's just not factually correct. That is not supported in the record. We couldn't do an interlocutory appeal at that time. I've done interlocutory appeals to this court before, and they're very hard to do. And I think from a summary judgment, it would not have been accepted. But, in fact, in the complaint, the administrative claim was incorporated by reference. And in the administrative claim, they actually talked about changing the copyright management information, which is the Section 1202 issue. And they specifically said this use of the copyright material can be analyzed under the takings clause of the Fifth Amendment. And that was incorporated by reference into the complaint. And the complaint had general prayers for relief for damages and for gains and advantages for other violations of law. But that's a separate cause of action, isn't it? Is there a waiver of sovereign immunity for that separate cause of action on the DMCA? We believe that would be under the general Tucker Act, Your Honor. We believe that would be under the general Tucker Act jurisdiction. And the question, then, would be whether it's a money-mandating statute. And we believe, under the fair interpretation rule, that it is money-mandating because if you don't read it as money-mandating, there's certain sections of the DMCA that would be superfluous. They would have no meaning. Maybe some of them are. Maybe some of them are superfluous. And I believe that Congress is supposed to be given it's supposed to be construed such that none of them are superfluous, Your Honor. So that's why we believe that it should be considered or fairly interpreted as a money-mandating statute. But it would have to be interpreted as a money-mandating statute in order for your cause of action to have any legs. Under the DMCA, that is correct, Your Honor. That is absolutely correct. Isn't it a tort? Taking? No, of course a taking is not a tort. Violating the anti-circumvention provisions of the Millennium Act looks to me like it's blatantly clearly a tort, in which case it's clearly outside the jurisdiction of the Court of Federal Claims, period. That is what the lower court ruled, Your Honor, that circumventing would be akin to a digital trespass. We've pretty much said as much in a prior case. But, Your Honor, our argument was that changing the copyright information to remove it from being owned by Mark Davenport to owned by AFCA, the government, the Air Force sub-agency, that that is more akin to a taking because you're asserting ownership over the program. But the actual act of taking that particular aspect is a tort. So you'd have to bring it under the Federal Tort Claims Act, which is outside of the jurisdiction of the Court of Federal Claims. That is an interesting question, Your Honor. If the government bivouacs on my land, initially it's a trespass and a tort, but if they remain there, at what point does it become a taking of the property? So there's a certain question is at what point does the trespass become a taking of the property? Alright, we thank counsel. We'll take the case under advisement.